## MORGAN v. OREGON SHORT LINE R. CO.

No. 1658.   Decided November 14, 1905 (83 Pac. 576).

CARRIERS—TRESPASSERS—EJECTION—DEATH.—Where, in an action for the death of a trespasser who had been stealing a ride on a passenger train, it appeared that deceased was instantaneously killed, and his body was found some distance from the place of his ejection and on the opposite side of the track, his death was not shown to be the proximate result of his ejection.

APPEAL from District Court Cache County; C. H. Hart, Judge.

Action by William Morgan, as administrator of John Morgan, deceased, against the Oregon Short Line Railroad Company. From a judgment in favor of plaintiff, defendant appeals.

REVERSED.

*P. L. Williams* and *Geo. H. Smith* for appellant.

*C. C. Richards* and *J. D. Call* for respondent.

### APPELLANT'S POINTS.

It was for the jury to say whether it was from the observations taken as described by the witness or from some other reasons or circumstances that he fixed the stops by particular telegraph poles. (*Nichols v. Oregon Short Line R. R. Co.,* 25 Utah 240, 246; *Saunders v. Southern Pacific Co.,* 15 Utah 234; *Hancer v. Bank,* 9 Utah 215.)

It was error to allow the question to be asked, which assumed a state of facts contrary to all the testimony and unsupported by any evidence. (*Nichols v. Oregon Short Line R. R. Co.,* 70 Pac. 996; *North Amer. Acc. Assn. v. Woodson,* 64 Fed. 689; *Thompson on Trials,* sec. 606; *Reber v. Herring,* 115 Pa. St. 599; *Haish v. Payson,* 107 Ill. 365; *Bomgardner v. Andrews,* 55 Ia. 638; *Williams v. Brown,* 28 Ohio St. 547; *State v. Anderson,* 10 Oregon 448; *Greeno v. Roark,* 56 Pac. [Kan. 1899] 329.)

RESPONDENT'S POINTS.

When a given state of facts is such that reasonable men might fairly differ as to the conclusions to be drawn respecting the wrongful act charged, the determination of the matter is for the jury. (*Olson v. O. S. L. R. R. Co.,* 24 Utah 472.) This rule is supported by numerous authorities. (*Morse v. Granite Co.,* 19 Mont. 450, 48 Pac. 745; *Wallace v. Suburban R. Co.,* 26 Ore. 174, 25 L. R. A. 663; *Anderson v. Northern Pac. Lum. Co.,* 21 Ore. 281, 28 Pac. 5; *Offet v. World's Col. Exp.* [Ill.], 51 N. E. 651; *McCune v. Santa Clara M. & L. Co.,* 110 Cal. 480, 42 Pac. 980; *Colorado Coal & Iron Co. v. John,* 38 Pac. 399; *Grand Trunk R. Co. v. Tennant,* 66 Fed. Rep. 922, 14 C. C. A. 190; *Neubacker v. Indianapolis Union R. Co.* [Ind.], 33 N. E. 798; *Habig v. Layne* [Neb.], 57 N. W. 539.)

The rule is that the hypothetical question need not embrace all the facts shown nor be limited to such facts, but may assume any facts which the evidence tends to establish and be addressed to any reasonable theory which may be drawn from them. (*People v. Durrant,* 48 Pac. 75; *Bever v. Spangler,* 61 N. W. 1072; *Horn v. New Jersey Steam Co.,* 48 N. Y. S. 343; *Preston v. Ocean S. S. Co.,* 53 N. Y. S. 444; *Dillibur v. Insurance Co.,* 87 N. Y. 80; *Hicks v. Railroad Co.,* 124 Mo. 115; *Hale v. Rankin,* 54 N. W. 217; *Wilkinson v. Detroit Works,* 41 N. W. 490; *Cole v. Fall Brook Coal Co.,* 159 N. Y. 59.)

A hypothetical question may be framed on an assumption of what the evidence tends to prove where that assumption is within the probable or possible range of the evidence. (*Jackson v. Burnham* [Colo.], 39 Pac. 577; *Courvoisier v. Raymond* [Colo.], 47 Pac. 284; *Lovelady v. State,* 14 Tex. App. 545; *Smith v. C. A. Ry. Co.* [Mo.], 23 S. W. 784; *Baker v. State* [Fla.], 11 So. 497; *Schleucker v. State* [Neb.], 1 N. W. 857; *Deig v. Morehead* [Ind.], 11 N. E. 458; Rogers on Ex. Tes., p., 39; *Louisville v. Wood* [Ind.], 14 N. E. 573; *Davidson v. State* [Ind.], 34 N. E. 972.)

The examiner may assume facts which the evidence tends to establish or in accordance with his theory of them. (*Bever v. Spangler* [Iowa], 61 N. W. 1072; *Meeker v. Meeker* [Iowa], 37 N. W. 773; *Krantz v. Electric Light Co.* [Ore.], 46 N. W. 787; *Peterson v. Chicago, etc.* [Minn.], 39 N. W. 485.)

BARTCH, C. J.

This case was before us on a former occasion, and is reported in 27 Utah, 92, 74 Pac. 523. We then arrived at the conclusion that under the proof, as it then appeared in the record, the plaintiff had shown no right of recovery, and reversed the judgment, and remanded the cause for a new trial. Afterwards another trial was had, which also resulted in a verdict and judgment for the plaintiff, and in this appeal. An examination of this record shows that the proof is substantially the same as that at the former trial, except that upon this trial the plaintiff attempted to fix the several places, where the train was stopped to expel the trespassers, by reference to the telegraph poles, and thereby to locate the point where the Olsen and Morgan boys were pulled off from the train, nearer the place where the body of the deceased was found. With this exception we refer to the statement of facts accompanying our former opinion as a sufficient statement for the purposes of this decision.

In reference to the change in the testimony of several of plaintiff's witnesses, it may be observed that, notwithstanding the counsel for the plaintiff insists that it now appears from the proof that the two boys were ejected from the train on the west side, at a point opposite the point where the body was found, the evidence still leaves the place where the unfortunate boy was ejected, from three-hundred to six-hundred feet south of where the body lay the next morning. This appears from the testimony of the plaintiff's witness Clarence Hunsacker, where he says: "As soon as this man went on top of the train, I ran up to the second car from the engine on the east side of the train, and then I crawled over on to the west side, and stood over by the side of the train, five or six feet away. The night was light, and the moon was shining. From where I was, on the west side, I saw two fellows standing holding on to the side of the train. One of them was on the rear end of the third car, and the other on the front end of the second car. Then I saw a man run up from the rear end of the train along the side. He came up along the side of the car and pulled off two fellows that were riding there, one on the rear end of the second car, and the other on the rear end of the rear car. . . . The last I saw of this man carrying a lantern was after he got on the rear end of the train after pulling these two boys off. The train was then moving. I got on

to the train at the place where these boys had been. I got on the second car from the rear." In addition to this testimony, the evidence shows that the train consisted of eight or nine cars, besides the engine and tender; that each car was about sixty feet long; that the train, at the time the two boys were pulled off, stopped south of Yates' crossing; and that the body was found seven to twenty feet north of that crossing, on the east side of the track.

Considering the testimony of the witness Clarence Hunsacker in connection with these facts, it will be seen that the point where the witness stood and watched the transaction of ejecting the two boys from the train must have been about two hundred feet south from the point where the body was afterwards found, and the point where they were ejected was a considerable distance farther south, for that occurred at the north end of the rear car, and when that car came along the witness got onto it at the same place which had been occupied by those boys. It is, therefore, utterly useless for counsel to insist that the boys were ejected at a point opposite from the point where the body was found. And whether that transaction occurred two hundred or three hundred feet, or a mile or two, away from the point where the deceased was found is wholly immaterial, since the evidence fails to connect the act of ejecting the boy with the injury. That there is a total failure to connect such act with the injury is true, even if we assume that the boys were pulled off the train opposite where the body lay; for in such event there would be nothing to indicate how the body got on the east side of the track, and that death was instantaneous is not only alleged in the complaint, but is shown by the character of the injury. We are, therefore, clearly of the opinion that on this trial, the same as on the previous one, the plaintiff has shown no right of recovery, and that both the motion for a nonsuit, and the request for a peremptory instruction made by the appellant, were well founded. For a more extended discussion of the evidence and questions presented, we refer to our opinion delivered upon the former appeal.

The judgment must be reversed, with costs, and the case remanded, with instructions to the court below to dispose of it according to law.

It is so ordered.

McCARTY, J., concurs.

STRAUP, J.

I concur in the result, reversing the judgment. I think the order should be to grant a new trial.